1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   Heller Ehrman LLP,                        No. C 14-4002 CRB
12              Appellant,                      **ORDER AFFIRMING THE
                                                BANKRUPTCY COURT**
13       v.
14   K. William Neuman,
15              Appellee.
16   _____/
17
18          Appellant Heller Ehrman LLP appeals the Bankruptcy Court's order allowing

19   Appellee K. William Neuman's Claim 719, which asserts that Heller Ehrman owes Neuman

20   $1,161,066.43 under an employment contract that Neuman entered into with the LLP.  See

21   Bankruptcy Ct. Order (dkt. 1-3) at 1 of 3.[1]  The Bankruptcy Court concluded that (1)

22   Neuman was not a shareholder at the time of the firm's dissolution, so he had a right to

23   compensation as an employee, (2) the firm's dissolution did not prevent Neuman from

24   satisfying his obligations under the contract, and (3) the claims arising from Neuman's

25   employment contract with the LLP were not subordinated in the LLP's Plans of Dissolution

26   and Liquidation.  See Bankruptcy Ct. Oral Ruling ("Oral Ruling") (dkt. 10-1) at 282–294 of

27   295.  For the following reasons, this Court AFFIRMS.

28
     _____
         [1] Given that the parties here combine dozens of separately paginated exhibits into single
     CM/ECF filings, this Court cites to the CM/ECF page numbers provided at the top of the filings, rather
     than to the page numbers of each individual exhibit.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

I.      **Factual Background**

The parties have stipulated to many of the facts and exhibits underlying this dispute, and this factual background draws in large part from those stipulations.  See Parties' Stipulated Facts ("Stipulated Facts") (dkt. 10-1) at 5 of 295.  The Bankruptcy Court also held a bench trial and made a number of factual findings as discussed below.  See Oral Ruling (dkt. 10-1) at 282–294 of 295.

A.      **The LLP's Organizational Structure**

Heller Ehrman LLP (the "LLP") was an international law firm that had been in business for 130 years prior to its dissolution and bankruptcy.  Stipulated Facts ¶ 6. Headquartered in San Francisco, California, Heller grew to include more than 730 attorneys across the United States, Europe, and Asia.  Id.  The LLP was originally a California general partnership named Heller, Ehrman, White & McAuliffe; its original managing partner was the California professional corporation ("PC") Heller, Ehrman, White & McAuliffe, PC.  Id. ¶ 7.  Multiple local PCs, each operating in different regions of the United States and later the world, served as partners of the LLP.  See id. ¶ 9.

A Partnership Agreement governed the LLP.  Id. ¶ 8.  The Partnership Agreement provided that a set of "Basic Documents" would control, among other things, the LLP's relationship with its partner PCs and shareholders.  See id. ¶ 11.  These Basic Documents consisted of "the Employment Agreement, the Shareholders Agreement, the Partnership Agreement and the Retirement System."  Id. ¶ 11.

B.      **Categories of LLP Employees**

The stipulated facts, exhibits, and findings of the Bankruptcy Court all indicate that the LLP had two categories of employees.  First, the firm had shareholders—comparable to "equity partners" at traditional law firms—who received variable compensation tied to the firm's profits.  See Employment Agreement (dkt. 10-2) at 7 of 162.  Shareholders were employed by the regional PCs that served as the LLP's partners.  The Basic Documents provided that shareholders would receive a percentage of the firm's yearly profits determined based on a variable "portion of the Company's draw . . . which is attributable to the

Employee" as determined by the firm.  <u>See</u> Employment Agreement (dkt. 10-2) at 59, 62–63 of 162.   The Basic Documents did not provide for any other shareholder compensation model; variable, percentage-based compensation was the "Exclusive Basis for [Shareholder] Compensation," and shareholders' "compensation shall be determined only as provided in this Agreement."  <u>Id.</u> at 62 of 162.  The Employment Agreement further provided that when a shareholder left the PC, the firm would repurchase the shareholder's "preferred stock," or in other words, refund the shareholder's capital account balance.  <u>See id.</u> at 63 of 162.  Additionally, the Employment Agreement expressly prohibited the amendment of its terms as to some but not all of the LLP's shareholders, providing that "this Agreement may not be amended in any respect unless all other Employment Agreements to which the Company is a party and which are then in effect are amended in identical respect."  <u>See</u> Appellee's Full Copy of Employment Agreement (dkt. 13-3) at 14 of 16.

Second, the LLP had fixed-income employees.  <u>See</u> Trial Transcript (dkt. 10-1) at 167–168 of 295.  This category of employees included staff, retired shareholders, and associates, all of whom were employed by the LLP and paid a salary, <u>see id.</u>, unlike shareholders, who were compensated with a percentage of the firm's profits and who were members of regional PCs, <u>see</u> Employment Agreement (dkt. 10-2) at 7 of 162.  Some former shareholders who had retired or who had been asked to give up their right to share in a percentage of the firm's profits nonetheless retained the "shareholder" or "retired shareholder" title in addition to several non-economic benefits that allowed them to hold themselves out as shareholders.  <u>See</u> Stipulated Facts ¶ 35; Trial Transcript (dkt. 10-1) at 84–85 of 295; Oral Ruling at 287 of 295.  These benefits might have included the former shareholder's title, preference in office selection, and priority receipt of baseball tickets.  <u>Id.</u>

**C.     Neuman's Employment at Heller Ehrman**

Neuman joined the LLP as an associate in 1976, became a shareholder in the 1980s, served as the head of the firm's Real Estate Practice Group, and eventually became the firm's Vice President – Real Estate Operations.  Stipulated Facts ¶ 5.  In addition to maintaining his practice, he secured new leases and supervised construction to accommodate the firm's

United States District Court
For the Northern District of California

1  international growth.  See Stipulated Facts ¶ 5.  Eventually, Neuman had to devote so much

2  time to the firm's internal real estate needs that his billable hours dropped; he was also

3  diagnosed with cancer and required treatment around 2001, although he continued to work

4  during and after his illness.  See Trial Transcript (dkt. 10-1) at 57–58, 81 of 295.

5         In early 2007, a member of the firm's Compensation Committee approached Neuman

6  to propose that he move from variable, profit-sharing compensation to fixed-income

7  compensation governed by a four year employment contract.  See Stipulated Facts ¶ 30.

8  After some negotiation over terms, Neuman and the firm agreed that he would move to a

9  fixed-income contract.  See id.  The contract expressly stated that it was an agreement

10 between Neuman and Heller Ehrman LLP, not one of the firm's regional PCs, and it was

11 signed by the LLP's managing shareholder—Robert Hubbell—rather than by an officer of a

12 regional PC.  See Neuman Employment Contract (dkt. 10-2) at 109–110 of 162.

13        **D.      Details of Neuman's 2007 Employment Contract**

14        Neuman's contract stated that he would become a "fixed income shareholder."  See

15 Neuman Employment Contract (dkt. 10-2) at 109 of 162.  The contract noted that he would

16 not appear on the variable compensation list published each year by the Compensation

17 Committee.  Id.  Additionally, he would not be required to make capital contributions to the

18 firm.  Id.  The contract further provided that Neuman's annual compensation would be fixed

19 by the Compensation Committee at $775,000, although that amount would be reviewed

20 annually with the requirement that Neuman provide at least 1,550 billable hours and at least

21 2,400 total hours of service to the firm each year.  Id.  The "term of this fixed income

22 arrangement" was four years.  Id.

23        Under the contract, Neuman would retain eligibility for the non-profit sharing benefits

24 associated with shareholder status: he could attend retreats and real estate practice group

25 meetings, receive financial information, retain some voting rights, and continue to receive

26 retirement benefits.  See id. at 109–110 of 162.  Finally, the contract provided that this

27 "signed letter will constitute the complete understanding of our agreement as to the matters

28

4

covered herein. Any subsequent changes to this agreement can only be made in writing, signed by you and another member of the Executive Committee . . . ." Id.

### E.     The Contract's Effect on Neuman's Shareholder Status

Following the adoption of Neuman's fixed-income employment contract, his name did not appear on a 2007 document reporting the allocation of profits within the firm. See Stipulated Facts ¶ 31. The report stated that "[t]hose shareholders who will be paid a fixed salary will be notified separately of their 2007 compensation." Id. Neuman received his fixed-income paychecks from Heller Ehrman's California PC. See Stipulated Facts ¶¶ 21–23. Neither the LLP nor the California PC repurchased Neuman's preferred stock, see id. ¶ 40, but later trial testimony indicated that the stock repurchase was to occur near the end of Neuman's contractual employment term as he approached retirement. See Trial Transcript (dkt. 10-1) at 107–108 of 295.

The LLP continued to list Neuman as an active shareholder in declarations to its lenders; later trial testimony indicated that this allowed the firm to convey the impression that partner defections were not placing the firm at risk of breaching its loan covenants. See Stipulated Facts ¶ 44; Trial Transcript (dkt. 10-1) at 185–186 of 295. Neuman was not aware until 2013 of at least some of the documents on which the firm listed him as a shareholder to its lenders. See Stipulated Facts ¶ 47. Furthermore, a firm document prepared for potential merger partners listed the firm's active shareholders and omitted Neuman from the list; he was classified under the heading "Status: Fixed and Other." See Trial Transcript (dkt. 10-1) at 185 of 295.

### F.     The LLP's Bankruptcy and Plans of Liquidation and Dissolution

In September 2008, Heller Ehrman's primary lender notified the LLP that it was in default on its line of credit. See Stipulated Facts ¶ 45. The LLP, with Neuman's support, voted to adopt a Plan of Dissolution in September 2008. Id. ¶¶ 50–51. In December 2008, the firm filed a voluntary petition for bankruptcy relief under Chapter 11 in the Northern District of California. Id. ¶ 54. In August 2010, the LLP and a group of unsecured creditors

1  filed a joint Plan of Liquidation.  Id. ¶ 55.  The Bankruptcy Court confirmed the plan the next

2  month.  Id. ¶ 57.

3         The Plan of Dissolution provided that "[t]here will be no return of capital to any

4  Shareholder, recently departed Shareholder, or former or retired Shareholder and no payment

5  of any kind made to former and/or retired Shareholders" until "all of the legal obligations of

6  the Firm-in-Dissolution to third party creditors are satisfied, except if permitted by the Firm's

7  senior secured lenders," with the exception that "Shareholders may pursue claims for

8  compensation for services rendered prior to their departure or other expenses or contractual

9  rights arising from or related to their employment."  See Plan of Dissolution (dkt. 10-3) at 43

10  of 65.  Similarly, the Plan of Liquidation subordinates shareholders claims for the return of

11  capital and expressly incorporates the language from the Plan of Dissolution that there "will

12  be no return of capital" to former Shareholders, although "Shareholders may pursue claims"

13  based on "contractual rights arising from or related to their employment."  See Plan of

14  Liquidation (dkt. 10-3) at 50 of 65.

15         **G.     Procedural Posture**

16         During the LLC's bankruptcy proceedings,  see In re Heller Ehrman, LLP, No.

17  3:08-bk-32514 (Bankr. N.D. Cal.), Neuman filed Claim 719, requesting $1,161,066.43 in

18  compensation from the firm under his 2007 employment contract.  See Stipulated Facts ¶¶

19  57–61.  The Bankruptcy Court allowed Neuman's Claim after a bench trial, concluding that

20  California law and the relevant contracts established that (1) Neuman was not a Heller

21  Ehrman shareholder at the time of the LLP's dissolution, so he could claim a right to

22  compensation as an employee (2) the firm's bankruptcy and dissolution did not prevent

23  Neuman from fulfilling his duties under the 2007 employment contract, and (3) Neuman's

24  claims were not subordinated by the Plans of Dissolution and Liquidation.  See Oral Ruling

25  (dkt. 10-1) at 282–294 of 295.  The Bankruptcy Court's express factual findings are listed in

26  the following subsection.  The LLC now appeals under 28 U.S.C. § 158(a)(1), Federal Rule

27  of Bankruptcy Procedure 8001(a), and Local Bankruptcy Rule 8001 et seq.

28

**United States District Court**
For the Northern District of California

### H.    The Bankruptcy Court's Findings of Fact

In reaching its conclusion, the Bankruptcy Court made a number of express factual findings based in part on the evidence presented at trial.  First, the Bankruptcy Court found that "when Mr. Neuman prepared his proposal for his salary-based compensation . . . he understood that this represented a unique, one-off arrangement."  <u>See</u> Oral Ruling at 285 of 295.  Second, the court found that the "2007 agreement represented the entirety of the parties' agreement regarding Mr. Neuman's employment and compensation for 2007 through 2010."  <u>Id.</u>  Third, "Mr. Neuman received a salary under the 2007 agreement and did not have an attributed percentage, as that defined term was used in the various Heller documents."  <u>Id.</u>  Fourth, "Mr. Neuman believed that he was an employee of Heller LLP from and after the date of the agreement or effectively for 2007 and was no longer an employee of the California PC."  <u>Id.</u>[2]

The Bankruptcy Court also found based on the evidence presented at the bench trial that Neuman's 2007 employment letter—written on LLP letterhead and signed by the managing shareholder of the LLP—was a new employment contract between Neuman and the Heller Ehrman LLP.  <u>See</u> Oral Ruling at 286 of 295.  It was not a modification of Neuman's original employment agreement with the Heller Ehrman California PC that had bound him during the time that he was a shareholder receiving variable income based on the firm's profits.  <u>See</u> <u>id.</u>; Employment Agreement (dkt. 10-2) at 7 of 162.  The Bankruptcy Court further found, based on trial testimony, that fixed-income employees at Heller Ehrman were employed by the LLP, and that shareholders were employed by the regional PCs.  <u>See</u> Oral Ruling at 286, 288 of 295.  The court reasoned that if the firm's management had intended Neuman to continue his employment with the California PC, "then an officer of the corporation would sign rather than a shareholder who happened to be the person who was the managing shareholder of the entire LLP."  <u>See</u> <u>id.</u> at 286 of 295.

---

[2] The second and third of these "factual findings" appear to be mixed questions of law and fact, and this Court will apply a de novo standard of review to them as discussed in the following section.  <u>See</u> <u>Hamada v. Far E. Nat'l Bank</u>, 291 F.3d 645, 649 (9th Cir. 2002).

## II.      LEGAL STANDARD

This Court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  In re Int'l Fibercom, Inc., 503 F.3d 933, 940 (9th Cir. 2007). Mixed questions of law and fact are reviewed de novo.  Hamada v. Far E. Nat'l Bank, 291 F.3d 645, 649 (9th Cir. 2002).  This Court "reviews the bankruptcy court's interpretation and meaning of contract provisions de novo."  In re W. Asbestos Co., 416 B.R. 670, 691 (N.D. Cal. 2009), aff'd sub nom. Renfrew v. Hartford Acc. & Indem. Co., 406 F. App'x 227 (9th Cir. 2010).  "The determination as to whether contract language is ambiguous and whether the written contract is reasonably susceptible of a proffered meaning, is also a question of law reviewed de novo."  Id.  But "when the bankruptcy court uses extrinsic evidence to interpret a contract, the court reviews the findings of fact for clear error and the principles of law applied to those facts de novo."  Id.

## III.     DISCUSSION

The parties dispute (1) whether Neuman was a shareholder or an employee at the time of the LLP's dissolution, (2) whether the LLP's dissolution prevented Neuman from fulfilling his obligations under his 2007 employment contract, and (3) whether Neuman's claim was subordinated by the Plans of Dissolution and Liquidation.  For the following reasons, this Court concludes that Neuman was an employee, not a shareholder, that he fulfilled his obligations under his contract, and that his claims were not subordinated.

### A.      Whether Neuman was a Shareholder in Heller Ehrman LLP

The parties agree that the Claim at issue here hinges on whether, under the relevant contracts and California law, Neuman was a shareholder or an employee.  See Appellant Br. (dkt. 10) at 17; Appellee's Br. (dkt. 13) at 11.  "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties."  Perez-Encinas v. AmerUs Life Ins. Co., 468 F. Supp. 2d 1127, 1133 (N.D. Cal. 2006) (citing Waller v. Truck Ins. Exchange, 900 P.2d 619, 627 (Cal. 1995).  "The court must look first to the language of the contract in order to ascertain its plain meaning."  Id. (citing Reserve Ins. Co. v. Pisciotta, 640 P.2d 764, 767 (Cal. 1982)).

1    The Bankruptcy Court made a factual finding that Heller Ehrman shareholders were

2    employed by regional PCs, whereas salaried employees worked for the LLP.  <u>See</u> Oral

3    Ruling at 286 of 295; <u>see also</u> Trial Transcript (dkt. 10-1) at 167–168 of 295.  Neuman's

4    2007 employment contract states that he was becoming a "fixed income shareholder" of the

5    LLP, rather than a variable income shareholder of the California PC.  <u>See</u> Neuman

6    Employment Contract (dkt. 10-2) at 109 of 162.  The 2007 contract  was signed by an officer

7    of the LLP, not an officer of the California PC.  <u>Id.</u>  It specified that unlike a shareholder,

8    Neuman was no longer required to make capital contributions to the firm and his name no

9    longer appeared on the firm's annual shareholder compensation list.  <u>Id.</u>  Thus, the "plain

10   meaning" of the contract indicates that Neuman agreed to become a salaried employee of the

11   LLP, not a shareholder of the California PC.  <u>See</u> <u>Perez-Encinas</u>, 468 F. Supp. 2d at 1133.

12   The LLP responds that Neuman's 2007 contract amended only the compensation

13   terms outlined in the Basic Documents, so the remainder of the terms remained operative and

14   Neuman continued to be a shareholder as defined in those documents.  <u>See</u> Appellant Br.

15   (dkt. 10) at 10.  This argument fails under the California parol evidence rule.  Under

16   California law, "[t]erms set forth in a writing intended by the parties as a final expression of

17   their agreement with respect to the terms included therein may not be contradicted by

18   evidence of a prior agreement."  Cal. Civ. Proc. Code § 1856(a) (West 2015); <u>see</u> <u>Sullivan v.</u>

19   <u>Massachusetts Mut. Life Ins. Co.</u>, 611 F.2d 261, 264 (9th Cir. 1979).  Here, Neuman's 2007

20   contract contains an integration clause expressly stating that this "signed letter will constitute

21   the complete understanding of our agreement as to the matters covered herein. Any

22   subsequent changes to this agreement can only be made in writing, signed by you and

23   another member of the Executive Committee."  <u>See</u> Neuman Employment Contract (dkt. 10-

24   2) at 109 of 162.   Thus, the Court concludes that California law does not permit the LLP to

25   rely on the Basic Documents to contradict the employment agreement's "plain

26   meaning"—that Neuman became a salaried employee of the LLP.  <u>See</u> <u>Perez-Encinas</u>, 468 F.

27   Supp. 2d at 1133.

28   Furthermore, "California requires that the language of the instrument [be] reasonably

susceptible of the proffered meaning before parol evidence may be introduced."  <u>See</u>

9

United States District Court
For the Northern District of California

1  Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc., 971 F.2d 272, 280 (9th Cir. 1992)

2  (citing Pacific Gas & Elec. Co. v. G. W. Thomas Drayage, 442 P.2d 641, 644 (Cal. 1968)).

3  The LLP's assertion that Neuman's 2007 employment contract amended only the Basic

4  Documents' compensation provision cannot be reconciled with the express terms of the

5  respective agreements.  The Basic Documents state that variable, percentage-based

6  compensation is the "Exclusive Basis for [Shareholder] Compensation," and shareholders'

7  "compensation shall be determined only as provided in this Agreement."  Employment

8  Agreement (dkt. 10-2) at 62 of 162.  Neuman's 2007 employment contract, on the other

9  hand, adopts a fixed-income compensation model.  See Neuman Employment Contract (dkt.

10  10-2) at 109 of 162.  Additionally, the Basic Documents state that "this Agreement may not

11  be amended in any respect unless all other Employment Agreements to which the Company

12  is a party and which are then in effect are amended in identical respect."  See Appellee's Full

13  Copy of Employment Agreement (dkt. 13-3) at 14 of 16.  The Court thus concludes that the

14  2007 employment contract is not "reasonably susceptible" to the LLP's "proffered

15  meaning"—that the contract served as an amendment to the Basic Documents—and that

16  Neuman's fixed salary cannot be reconciled with the compensation scheme that the Basic

17  Documents provided for shareholders.  See Brinderson-Newberg, 971 F.2d at 280.

18      In reply, the LLP argues that Neuman must have been a shareholder given that (1) he

19  retained some of the privileges associated with shareholder status, (2) he was listed as a

20  shareholder on some firm documentation, (3) the firm did not buy back his preferred stock,

21  and (4) he received his paychecks from the California PC, rather than the LLP with whom he

22  signed his employment contract.  See Appellant Reply Br. (dkt. 14) at 3–4.  To the extent the

23  LLP is arguing that the Court should interpret Neuman's contract based on the subsequent

24  "course of performance" of the parties, its argument fails because it has not demonstrated that

25  Neuman, "with knowledge of the nature of the performance and opportunity for objection to

26  it, accept[ed] the performance or acquiesce[d] in it without objection."  See  Employers

27  Reinsurance Co. v. Superior Court, 161 Cal. App. 4th 906, 920 (Ct. App. 2008).

28      Neuman was not aware until 2013 of at least some of the documents on which the firm

listed him as a shareholder to its lenders.  See Stipulated Facts ¶ 47.  To the contrary, a firm

United States District Court
For the Northern District of California

document prepared for potential merger partners listed the firm's active shareholders and did not include Neuman's name; he was classified under the heading "Status: Fixed and Other." See Trial Transcript (dkt. 10-1) at 185 of 295. Additionally, the Bankruptcy Court found based on trial testimony that "Mr. Neuman believed that he was an employee of Heller LLP from and after the date of the agreement or effectively for 2007 and was no longer an employee of the California PC." See Oral Ruling at 285 of 295. Thus, even if the firm did tell banks that Neuman was a shareholder and delay the return of his preferred shares, the LLP has failed to establish that Neuman knew about the firm's conduct and "acquiesce[d] in it without objection." See Employers Reinsurance Co., 161 Cal. App. 4th at 920.[3]

Furthermore, the Court does not need to examine the parties' "course of performance" here because the "plain meaning" of the contract is clear: Neuman was a fixed-income employee of the LLP, not a shareholder compensated with a percentage of the firm's profits. See Perez-Encinas, 468 F. Supp. 2d at 1133.[4] The LLP has not shown that the Bankruptcy Court committed "clear error" by finding that shareholders were employed by regional PCs, whereas Neuman signed his fixed-income employment contract with the LLC. See In re Int'l Fibercom, Inc., 503 F.3d 933, 940 (9th Cir. 2007); Oral Ruling at 286 of 295. The Court thus concludes that Neuman ceased to be a shareholder of the California PC and became instead a salaried employee of the LLC.

The LLP also argues that for Neuman to prove the two parties substituted the 2007 contract for the Basic Documents, it must "clearly appear[] that the parties intended to extinguish rather than merely modify the original agreement," and here that intention does

---

[3]  The LLP points to agreements it signed with retiring shareholders that included the repurchase of preferred stock, among other things, as examples of agreements in which a shareholder was converted to an employee. See Appellant Br. (dkt. 10) at 21. These agreements fail as "course of conduct" intent evidence because the Bankruptcy Court found that "when Mr. Neuman prepared his proposal for his salary-based compensation . . . he understood that this represented a unique, one-off arrangement." See Oral Ruling at 285 of 295; Employers Reinsurance, 161 Cal. App. 4th at 920.

[4]  The LLP also attempts to interpret the Basic Documents—specifically their voting rights and profit sharing provisions —to support an argument that Neuman's fixed salary could only be paid out of the firm's profits. See Appellant Br. (dkt. 10) at 18–20. Its argument fails because the Basic Documents cannot be reconciled with the Neuman's 2007 contract, see Brinderson-Newberg, 971 F.2d at 280, and the 2007 contract does not specify that Neuman's fixed salary must be paid from partnership profits, see Neuman Employment Contract (dkt. 10-2) at 109 of 162.

United States District Court
For the Northern District of California

not "clearly appear." <u>See</u> <u>Howard v. Cnty. of Amador</u>, 220 Cal. App. 3d 962, 977 (Ct. App. 1990). The LLP's argument ignores the provision in the Basic Documents stating that the "Exclusive Basis for [Shareholder] Compensation" is variable, not fixed, compensation, and that no amendment to that employment arrangement is permitted unless the amendment is made to all the firm's shareholder employment agreements. <u>See</u> Employment Agreement (dkt. 10-2) at 62 of 162. The LLP does not assert here that every shareholder was moved to a fixed-income arrangement at the same time as Neuman, and the Court concludes that the parties "clearly appear" to have adopted a new agreement that cannot be reconciled with the Basic Documents. <u>Howard</u>, 220 Cal. App. 3d at 977 (Ct. App. 1990). The Bankruptcy Court thus properly concluded that Neuman was a salaried employee, not a shareholder.

**B.    Whether the LLP's Dissolution Prevented Neuman from Fulfilling His Obligations under the 2007 Employment Agreement**

The LLP argues that the firm's dissolution prevented Neuman from fulfilling his obligations under the 2007 employment contract.[5] The Court disagrees. Neuman's contract covered a term of fours years, requiring him to bill at least 1,550 hours and work a total of 2,400 hours in each of those years to receive his fixed compensation. <u>See</u> Neuman Employment Contract (dkt. 10-2) at 109 of 162. The LLP asserts that the firm's dissolution kept Neuman from satisfying his hours requirements during two of the four years covered by his contract. Appellant Br. (dkt. 10) at 20–22. The LLP filed a voluntary bankruptcy petition in 2008, <u>see</u> Stipulated Facts ¶ 54, and the LLP contends that Neuman should not be compensated for 2009 or 2010 because he could not meet his hours requirements after the firm ceased its operations in 2008. <u>See</u> Appellant Br. (dkt. 10) at 20–22.

California law defeats the LLP's argument that Neuman failed to fulfill his contract obligations given that the firm voluntarily filed a bankruptcy petition and prevented him from continuing to meet his hours requirements. It is well established that "where an employer

---

[5] The LLP further argues that because the firm (1) suspended shareholder compensation and (2) terminated its shareholders as part of the dissolution process, Neuman is not entitled to the compensation he claims. <u>See</u> Appellant Br. (dkt. 10) at 20. This argument fails because Neuman was not a shareholder at the time of the firm's dissolution, as discussed in the foregoing section. The LLP's argument that Neuman was not entitled to additional compensation because shareholders are only compensated from the firm's net profits, <u>see id.</u>, fails for the same reason.

puts out of his power the further performance of an employment contract by selling his entire business it operates as a discharge of his employee engaged in such business." Gaspar v. United Milk Producers, 62 Cal. App. 2d 546, 553 (Ct. App. 1944); accord O. Miller Associates v. Gca Corp., 69 Cal. App. 3d 966, 972 (Ct. App. 1977).

Even where an employee's contract is subject to satisfactory performance—here review by the Compensation Committee and an hours requirement—"where the evidence shows no bona fide dissatisfaction, and the discharge is for other reasons, the employee can recover." See 1 Witkin on Contracts § 785 (10th ed. 2005) (citing Seifert v. Arnold Bros., 138 Cal. App. 324, 326 (Ct. App. 1934). The LLP has made no showing that Neuman's performance was unsatisfactory prior to its dissolution in 2008, and thus the Court concludes that the dissolution did not prevent Neuman from satisfying his obligations under the four-year 2007 employment agreement. See Seifert 138 Cal. App. at 326.

### C.   Whether Neuman's Claim was Subordinated by the Plans of Dissolution and Liquidation

The LLP argues that the Plans of Dissolution and Liquidation adopted by the firm subordinated claims by shareholders and former shareholders, including Neuman. See Appellant Br. (dkt. 10) at 22. According to the LLP, given that a "reorganization plan resembles a consent decree and therefore, should be construed basically as a contract," the plans here bar Neuman's claim. See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 588 (9th Cir. 1993). The Court concludes that the Bankruptcy Court properly determined Neuman's claim was not subordinated. See Oral Ruling at 292 of 295.

The Plan of Dissolution provided that "[t]here will be no return of capital to any Shareholder, recently departed Shareholder, or former or retired Shareholder and no payment of any kind made to former and/or retired Shareholders" until "all of the legal obligations of the Firm-in-Dissolution to third party creditors are satisfied, except if permitted by the Firm's senior secured lenders," with the exception that "Shareholders may pursue claims for compensation for services rendered prior to their departure or other expenses or contractual rights arising from or related to their employment." See Plan of Dissolution (dkt. 10-3) at 43 of 65. Similarly, the Plan of Liquidation expressly incorporates the language from the Plan

of Dissolution stating that there "will be no return of capital" to former Shareholders, although "Shareholders may pursue claims" based on "contractual rights arising from or related to their employment." See Plan of Liquidation (dkt. 10-3) at 50 of 65.

Here, Neuman's claim does not involve the return of capital; he argues that he is entitled to compensation under an employment contract. See Bankruptcy Ct. Order (dkt. 1-3) at 1 of 3.[6] The disputed portions of the Plans of Dissolution and Liquidation allow former shareholders to pursue claims—like the claim here—" based on "contractual rights arising from or related to their employment." See Plan of Dissolution (dkt. 10-3) at 43 of 65; Plan of Liquidation (dkt. 10-3) at 50 of 65. The Bankruptcy Court thus properly determined that Neuman's claim is not subordinated by the Plans of Dissolution and Liquidation. See Oral Ruling at 292 of 295.

## IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Bankruptcy Court's order allowing Neuman's claim.

**IT IS SO ORDERED.**

Dated: September 30, 2015

_____
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[6] Neuman acknowledges that there is no likelihood that his former capital reserve balance of $431,704 will be returned. See Stipulated Facts ¶ 46.

14